UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HARTWELL L. GAUTHIER, JR., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:05-cv-1362 (VLB) |
| YARDNEY TECHNICAL PRODUCTS, | : | |
| INC., | : | |
|     Defendant. | : | September 13, 2007 |

**MEMORANDUM OF DECISION AND ORDER DENYING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [Doc. #37]**

The plaintiff, Hartwell Gauthier, brought this action against the defendant, Yardney Technical Products, Inc. ("Yardney"), his former employer, alleging Yardney: 1) interfered with his rights guaranteed by the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et. seq.; 2) retaliated against him for exercising his FMLA rights; 3) breached an implied contract by terminating his employment; and 4) wrongfully terminated his employment under the theory of promissory estoppel. Yardney now moves for summary judgment as to Gauthier's first, third and fourth claims. For the following reasons, Yardney's motion for summary judgment is DENIED.

I. Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

1

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'"  Bouboulis v. Transp. Workers Union of Am., 442 F.3d 55, 59 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing that no genuine issues exist as to any material facts.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986).  If the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of [its] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "If the party moving for summary judgment demonstrates the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor."  Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

The court "construe[s] the evidence in the light most favorable to the non-moving party and . . . draw[s] all reasonable inferences in its favor."  Huminski v. Corsones, 396 F.3d 53, 69-70 (2d Cir. 2004).  "[I]f there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied."  Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006).

## II. Facts

The following facts culled from the pleadings, and exhibits thereto, are relevant to the current motion. For purposes of this motion, the court accepts facts as true if undisputed by the parties and resolves issues of disputed fact in favor of Gauthier as the non-moving party, where there is evidence to support his claims.

Gauthier worked as a design/drafter for Yardney, a manufacturer of batteries, among other things, beginning on November 6, 1995. He worked continuously for Yardney until he was fired on April 18, 2005. His job title did not change throughout his employment. Gauthier's duties as a design/drafter included mechanical design and layout tasks for battery assembly.

In a letter dated November 1, 1995, Yardney communicated its offer of employment to Gauthier including a starting salary of $3,000 per month and "all company benefits accorded to salaried exempt personnel at a comparable level." [Doc. #39, Ex. 4] Gauthier was required to confirm his acceptance by signing the letter and returning it to Yardney's human resources department, which he did on November 6, 1995.

On November 6, 1995, Gauthier met with his immediate supervisor James Skelton. Gauthier and Skelton had worked together previously at an engineering company named United Nuclear. Gauthier claims that during this meeting he pointed out to Skelton that Yardney's employee manual did not specify the amount of personal and sick time employees are entitled to take off from work.

3

Skelton replied "do what you did at United Nuclear. Use that as a basis. And everything will be great." [Doc. #39, Ex. 1] Gauthier then reminded Skelton that United Nuclear specified employees could use ten sick days and five personal days per year. Skelton said "that was fine." Id.

Gauthier relied on Skelton's characterization of his benefits and followed those guidelines throughout his nearly decade of employment. At no time did anyone at Yardney contradict Skelton's statements regarding Gauthier's leave entitlements.

Yardney provides an employee benefit package that includes short term disability leave, long term disability leave, vacation time and sick and/or personal days away from work. Yardney specifically identifies these types of leave in a pamphlet highlighting benefits for employees, and company guidelines for short term disability, vacation and sick and/or personal time. [Doc. #39, Ex. 2, 6-8]

At an October 23, 2006, deposition, Gauthier testified that he did not recall anyone at Yardney showing him the company's leave guidelines or explaining their contents to him. [Doc. #37, Ex. 4, pg. 73-73] He did, however, know to, and in fact did, contact the director of human resources with benefits questions. He said he relied on human resource's responses. Gauthier also stated he believed he could be fired by Yardney at any time and that Yardney provided him with no contract beyond its initial offer letter. [Doc. #37, Ex. 4, pg. 55, 57, 71]

On August 8, 2004, Gauthier injured his back. He began missing work because of his injury the next day, August 9. Yardney provided Gauthier with

FMLA leave and continued to pay him while recovering from the back injury.

Gauthier received permission from his doctor to resume work in November 2004. Gauthier expected to return to his prior position of design/drafter, a job that may be performed while seated. His doctor's clearance to return to work was based, at least in part, on the assumption that he would be seated throughout the workday.

On November 8, 2004, Gauthier returned to work. Upon his return, Gauthier was reassigned to a different position, performing a different function. This new position did not involve drafting and required him to stand while working. The new position was located in an area with heavy machinery and toxic chemicals. Gauthier experienced pain in his injured back from standing and took pain medication while at work. He informed his supervisor that he took the pain medication. His supervisor explained Gauthier could not work with chemicals and machinery while medicated and sent him home after working only half a day.

Gauthier returned to FMLA leave after November 8, 2004. He resumed full time employment on November 22, 2004. On returning to work, Gauthier was reassigned to a third position located in a different building than his design/drafter job. This new position involved monitoring the electro platting process and physically coating plates with a chemical substance. These physical duties aggravated Gauthier's back injury. The position included no drafting responsibilities. Further, Gauthier's computer access privileges were revoked

and he could no longer access his prior drafting projects.  He remained in the monitoring position until his dismissal.

Between November 22, 2004, and April 18, 2005, Gauthier missed 54 hours of work.  His direct supervisor approved all of Gauthier's absences prior to his missing work except when not possible such as tardiness caused by inclement weather.  Gauthier received positive performance reviews when conducting his monitoring duties.

On April 18, 2005, Yardney fired Gauthier for poor performance and absenteeism.  Yardney's director of human resources testified at his deposition that he could not recall anyone other than Gauthier being fired for excessive leave.  [Doc. #39, Ex. 3, pg. 31-33]

On August 29, 2005, Gauthier instituted this action.  Gauthier filed an amended, four count complaint on September 29, 2005, alleging Yardney: 1) interfered with his rights protected by the FMLA; 2) retaliated against him for exercising his FMLA rights; 3) breached an implied contract; and 4) was promissorily estopped from dismissing him.  [Doc. #28]  Yardney moved for summary judgment as to Gauthier's FMLA interference, implied contract and promissory estoppel claims on December 15, 2006.  [Doc. #37]

Yardney first seeks summary judgment on Gauthier's FMLA interference claim asserting that the complaint actually states a claim of FMLA retaliation and not interference.  As such, Yardney claims it is entitled to summary judgment as to the interference claim.

Secondly, Yardney contends that Gauthier was nothing more than an at will employee, to whom no promises were made and with whom no contract was created, who could be terminated at any time. Accordingly, Yardney is entitled to summary judgment on Gauthier's implied contract and promissory estoppel claims.

### III. FMLA Interference

The FMLA entitles eligible employees to twelve (12) workweeks per year of unpaid leave "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). At the end of FMLA leave, an employee has the right "to be restored by the employer to the position of employment held by the employee when the leave commenced" or in the alternative to "an equivalent position with equivalent . . . terms and conditions of employment." 29 U.S.C. § 2614(a)(1). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the statute. 29 U.S.C. § 2615(a)(1).

A plaintiff may raise separate causes of action for interference with the exercise of FMLA rights and employer retaliation against employees who exercised their FMLA rights. See Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004).

"The FMLA contains prescriptive protections that are expressed as substantive statutory rights." King v. Preferred Tech. Group, 166 F.3d 887, 891

(7th Cir. 1999). An interference claim is brought pursuant to 29 U.S.C. § 2615(a)(1) and alleges that an employer failed to provide an employee her substantive rights created by the statute. See The Family and Medical Leave Act 334-35 (Michael J. Ossip & Robert M. Hale eds., 2006). Substantive rights under the FMLA subject to interference claims include the right to take leave, receive benefits during leave and be restored to the same or equivalent position following leave. See King, 166 F.3d at 891; Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1287-88 (10th Cir. 2007); Stallings v. Hussmann Corp., 447 F.3d 1041, 1050 (8th Cir. 2006).

"In addition to the substantive guarantees contemplated by the Act, the FMLA also affords employees protection in the event they are discriminated against for exercising their rights under the Act." King, 166 F.3d at 89. Accordingly, the FMLA "proscribes action by the employer to discriminate or to retaliate against an employee for the exercise of rights created by the Act." Rice v. Sunrise Express, Inc., 209 F.3d 1008, 1017 (7th Cir. 2000) (citing King, 166 F.3d at 89). Claims of FMLA retaliation are brought pursuant to § 2615(a)(2) and (b).

The Second Circuit in Sista v. CDC Ixis North America, Inc., 445 F.3d 161 (2d Cir. 2006), relying favorably on the Seventh Circuit's decision in King, recently clarified the elemental difference between interference and retaliation claims, and their respective burdens of proof required within the Second Circuit. It held that claims of retaliation include employer intent as a material element of proof. Sista, 445 F.3d at 176. As such, retaliation claims are evaluated under the familiar

8

burden shifting framework articulated by the Supreme Court in <u>McDonnell Douglass Corp. v. Green</u>, 411 U.S. 792 (1973), namely: 1) a plaintiff must establish a prima facie case of discrimination; 2) the employer must offer evidence of a legitimate non-discriminatory reason for its actions; and 3) the plaintiff must then prove the employer's stated reasoning is pretext for discrimination. <u>Sista</u>, 445 F.3d at 169, 175-76.

Contrastly, to establish an interference claim pursuant to 29 U.S.C. § 2615(a)(1) the plaintiff need only prove that "the employer in some manner impeded the employee's exercise of his or her right[s]" afforded substantive protection under the FMLA. <u>Id.</u> at 176 (citing <u>King</u>, 166 F.3d at 891). A plaintiff bears the burden of establishing only a prima facie case for interference claims, and the court need not entertain the issue of the employer's intent. <u>Id.</u>

To establish a prima facie claim for FMLA interference, a plaintiff must demonstrate that: 1) she was an eligible employee under the FMLA; 2) the defendant was an employer under the FMLA; 3) she was entitled to leave under the FMLA; 4) she gave notice to the defendant of her intention to take leave; and 5) the defendant denied her rights to which she was entitled by the FMLA. <u>Brown v. Pension Bds.</u>, 488 F. Supp. 2d 395, 408 (S.D.N.Y. 2007); <u>Roberts v. Ground Handling, Inc.</u>, 2007 U.S. Dist. LEXIS 23441, at *24-25 (S.D.N.Y. Mar. 30, 2007).

In count one of the complaint, Gauthier alleges all five elements of a prima facie claim of FMLA interference, most notably that "on or about November 2004 the plaintiff was reassigned when he came back from medical leave." [Doc. #28]

In more detail, the opposition to this motion notes Gauthier was assigned to a non-drafting job after his first FMLA leave on November 8, 2004, and still a third, different position after returning from his second FMLA leave on November 22, 2004, that also did not include drafting. [Doc. #39]

Yardney's motion for summary judgment does not challenge any elements of Gauthier's prima facie interference claim. In particular, the motion does not even treat the topic of Gauthier's position or job responsibilities upon returning from either his first or his second FMLA leave, nor their comparison to his design/drafter position. The motion merely asserts "[g]iven the supporting facts alleged in the first count, it is more appropriately viewed as a cause of action in retaliation rather than interference. . . . As such, the first and second counts are essentially identical and should be treated accordingly." [Doc. #37, Def.'s Mem. in Supp.]

Gauthier may establish the fifth element of a prima facie case and pursue a claim for FMLA interference if he can show Yardney reassigned him to a position with different responsibilities or duties following his FMLA leave. See Roberts, 2007 U.S. Dist. LEXIS 23441, at *37 (establishing a claim for FMLA interference when employee not reinstated to prior position or equivalent). Gauthier alleges he was twice reassigned to jobs other than design/drafter, in a different unit and physical location within the company, entailing different duties and responsibilities, upon returning from FMLA leave. Yardney does not dispute those allegations in this motion.

10

The equivalency of design/drafter to Gauthier's subsequent two positions under the FMLA is a factual determination for the jury. Accordingly, Yardney's motion for summary judgment as to Gauthier's FMLA iinterference claim is DENIED.

## IV. Implied Contract

In Connecticut, "[a]s a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." D'Ulisse-Cupo v. Board of Directors of Notre Dame High School, 202 Conn. 206, 212 (Conn. 1987). Case law reveals several theories on which an at will employment relationship can be modified or qualified, including a contract implied in fact or promissory estoppel. See Manning v. Cigna Corp., 807 F. Supp. 889, 893 (D. Conn. 1991) (outlining various employment relationships beyond express contracts and at will employment).

"A contract implied in fact, like an express contract, depends on actual agreement. . . . Accordingly, . . . the plaintiff ha[s] the burden of proving by a fair preponderance of the evidence that the defendant had agreed, either by words or action or conduct, to undertake some form of actual contract commitment to him under which he could not be terminated without just cause." Reynolds v. Chrysler First Commer. Corp., 40 Conn. App. 725, 730 (Conn. App. Ct. 1996) (internal quotations and citations omitted); see also D'Ulisse-Cupo, 202 Conn. at 211, n. 2 (implied contracts require intent to bind). "It is firmly established that statements in an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between employer

11

and employee. Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 533 (Conn. 1999).

However, "[a] contractual promise cannot be created by plucking phrases out of context; there must be a meeting of the minds between the parties. The mere fact that the plaintiff believed the guidelines to constitute a contract does not bind the defendant without some evidence that it intended to be bound to such a contract." Reynolds, 40 Conn. App. at. 730 (internal citations omitted).

Yardney relies exclusively on Gauthier's deposition testimony to show there are no issues of material fact regarding the existence an implied contract. Gauthier testified that he could not recall anyone ever showing him the company's leave guidelines or explaining their contents to him. Additionally, Yardney relies on Gauthier's acknowledgement that he understood his employment to be generally at will. As a result, Yardney contends it made no representations to Gauthier that could be construed to mean his employment was anything other than at will. Yardney does not address the other factual assertions upon which such a contract could be formed.

Gauthier points to several additional facts. First, Yardney's November 1, 1995, offer letter specifically stated Gauthier was entitled to all benefits made available to employees in his class. Second, Gauthier was given benefits information by Yardney's director of human resources in response to questions he asked about his leave entitlements. Presumably, the company's human resources department dispenses advice consistent with its benefits guidelines.

Third, during Gauthier's entrance interview with his direct supervisor he specifically inquired into the availability and limits of sick days and personal days, and was provided guidelines to follow.  Finally, Gauthier's supervisor approved all of his post FMLA leave absences, and, in its defense of the FMLA interference claim, Yardney insists it approved the entire FMLA leave itself.  Whats more, Gauthier relied on Yardney's statements and acts throughout his employment spanning nearly a decade.

"In cases involving implied employment contracts, the terms of which must be gleaned from employment manuals, company memoranda, and the totality of the employment relationship . . . definitive contract language is obviously lacking, and the intent of the parties remains a question of fact to be determined by the jury."  Heller v. Champion Int'l Corp., 891 F.2d 432, 435 (2d Cir. 1989); see also Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied, 474 U.S. 829 (1985) ("summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated"); Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 113 (1988) (determining the parties' intention is within the province of the jury: it is "the raison d'etre of the jury system"); Bead Chain Mfg. Co. v. Saxton Products, Inc., 183 Conn. 266, 274-75 (1981) ("Absent a statutory warranty or definitive contract language, the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact"); Carbone v. Atlantic Richfield Co., 204 Conn. 460, 471-72 (1987) (in the absence of definitive contractual language, the question

of whether the parties intended an employment manual to constitute part of their contract is a question of fact to be determined by the trier of fact).

With respect to any potential inconsistencies between Gauthier's deposition testimony and his proposed trial testimony, "it was within the province of the jury to resolve any possible inconsistencies in the plaintiff's testimony in a manner favorable to the plaintiff." Stewart, 267 Conn. at 114.

There exist issues of fact material to whether Yardney's statements and actions rise to the level of an implied employment contract. Even if Yardney's statements do not remove Gauthier's employment from at will in its entirety, they could have created an implied contract that he would not be fired for absenteeism if he followed the company's leave guidelines. See Id. at 109 (implied contract or promissory estoppel can effect only a specific factor of employment relationship).[1]

Accordingly, Yardney's motion for summary judgment as to Gauthier's implied contract claim is DENIED.

## V. Promissory Estoppel

The theory of promissory estoppel does not require overt agreement between the parties. The fundamental element of promissory estoppel is a promise that the promisor could reasonably expect to induce reliance. Stewart v.

---

[1] Yardney relies heavily on D'Ulisse-Cupo to claim an implied contract or promise must alter an at will employment in its entirety. However, the Connecticut Supreme Court in Stewart went to great length to distinguish D'Ulisse-Cupo, finding an at will employment can be modified only in part. Stewart, 267 Conn. at 109

14

**Cendant Mobility Servs. Corp.**, 267 Conn. 96, 104 (Conn. 2003). The promise "need not be the equivalent of an offer to enter into a contract because the prerequisite for . . . application of the doctrine of promissory estoppel is a promise and not a bargain and not an offer." Id. at 105.

Given the facts discussed above, and their application to Gauthier's implied contract claim, Yardney's motion for summary judgment as to Gauthier's promissory estoppel claim must also be DENIED. Material issues of fact exist regarding whether Yardney's statements amount to promises effecting Gauthier's employment status, and its standards for terminating him for absenteeism. Additionally, Gauthier relied on Yardney's statements regarding his leave entitlements.

## VI. Conclusion

Based on the foregoing, Yardney's motion for summary judgment is DENIED. Failure to reinstate an employee to a prior position or its equivalent following FMLA leave is a properly pled FMLA interference claim. Yardney failed to allege any facts disputing Gauthier was reassigned to a different position with dissimilar duties to his design/drafter position.

There is evidence clearly in dispute regarding exactly what promises and assurances were made by Yardney or its employees to Gauthier regarding his leave entitlements. These issues are material to Gauthier's implied contract and promissory estoppel claims and should be resolved at trial.

**IT IS SO ORDERED.**

           /s/
_____

**Vanessa L. Bryant**

**United States District Judge**


**Dated at Hartford, Connecticut: September 13, 2007.**